OVERTON, J.
 

 R. R. Barrow, now deceased, was the owner of the Baratarla and Bayou Lafourche canal, sometimes known as the company canal. The United States government was about; to construct the Intracoastal canal from Morgan City to New Orleans. Barrow, naturally, did not care for his canal to be paralleled by another canal, and by one through which commerce would pass free. At this time the gow
 
 *700
 
 eminent was considering the advisability of constructing a new canal between Morgan City and New Orleans, or purchasing the Barataría, and Bayou Lafourche canal, or the Harvey canal,. which practically paralleled it, or a portion of each.
 

 In view of this situation, Barrow was very desirous of. selling his canal. He saw plaintiff, who is a member of the law firm of Milling, Godehaux, Saal & Milling, regarding the matter. Plaintiff inspected the canal in company with Barrow, and entered into a verbal agreement with him to assist in disposing of the canal.
 

 . This. agreement, on August 16, 1919, was confirmed in a letter written by plaintiff to Barrow, and submitted to the latter for acceptance. Plaintiff said in the letter that he would undertake the service purely on a contingent fee; but with the understanding that Barrow would advance the costs, which should not exceed, without further consultation, $3,000. The amount of the contingent fee was stated to be 10 per cent, of the minimum amount to be received for the canal, up to $300,000, and one-half of what might be realized in excess of that amount.
 

 After the foregoing letter was received, and after some discussion concerning it, an addendum was added to the letter, and signed by both parties, by which it was agreed, first, that plaintiff would press the negotiations for the sale of the property, and bring the same to a termination as early as practicable; secondly, that, should' an opportunity arise for the sale of the canal by either plaintiff of Barrow, during the negotiations for the sale to the government, to any other than the government, and should the sale be satisfactory to Bárrow, then it might be made to such other, and the compensation to plaintiff would be the same as if the sale were to the governr ment; thirdly, that, if a sale .should be consummated of any portion of the canal, satisfactory to Barrow, and the remaining portiqn not be sold, then the compensation to plaintiff should be the same as stated in plaintiff’s letter to Barrow, outlined above; fourthly, that should, for any reason, the government decide on another route, and a sale not be effected to the government, then plaintiff bound himself, in that event, to release Barrow from the agreement, immediately upon that fact being ascertained; that the sale of the canal should be finally agreed to within five years from the date of this addendum, and, if at the end of that time no agreement should be reached as to the sale of the canal, then this contract, unless further extended by mutual consent, should cease to exist, and no further obligations should rest against either party, the said Barrow paying the amount of expenses incurred, not to exceed $3,000, as set forth in plaintiff’s letter, and plaintiff receiving no compensation.
 

 On October 12,1919, another addendum was added to the contract, purporting to interpret it. This addendum merely reiterates the right of Barrow to be released from the contract in the event it is found not to be possible within five years to make a sal© of the canal, and that, should the sale be. effected with any other than the government, during that time, then the conditions would be the same as if the sale had been made to the government.
 

 In February, 1925, a section of the canal was sold to Donelson Caffery, trustee, for $75,000, $35,000 of which was paid cash, and the balance, amounting to $40,000, was evidenced by a promissory note of the purchaser, payable in one year. This sale was consummated pursuant to an option granted by Barrow to a Mr. Wells, dated July 20, 1924, the purchase to be made on or before December'
 
 *702
 

 31, 1924.- The
 
 option was extended by Bar-' row, and the deed, conveying title, was passed on February 10,1925. On the day the option was given the contract between Barrow and plaintiff had not expired, but it had expired by the lapse of the five-year period, when the sale was finally consummated.
 

 Another section of the canal was sold to the United States government, in June, 1925, for $85,000 cash. This sale was made, pursuant to an agreement reached in 1923, while the contract between plaintiff and Barrow was still in force, the agreement being to the effect that the United States would purchase the section, later conveyed to- it, upon condition that Barrow would increase the right of way for' the section, ■ which the government stated it would purchase, from 192 feet in width to 300 feet, but this condition was not fulfilled, and the sale was not actually passed, until the contract between plaintiff and Barrow had expired.
 

 After the consummation of the sales Barrow died. The administratrix of his succession, in due course, filed her final account, but failed to carry plaintiff thereon for his commission of 10 per cent, on the amount of the two sales. Plaintiff filed an opposition to the account, praying that he be carried thereon for $7,500 in the sale to Caffery, trustee, and $8,500 in the sale to the government, making a total of $16,000. The defenses are that plaintiff contributed nothing to the consummation of the sales, and, moreover, that they were consummated after the expiration of plaintiff’s contract.
 

 On the trial of the opposition, in addition to what is stated above, the following was shown. At the outset, plaintiff suggested to Barrow that, in order to dispel an idea, which he understood the government entertained, to the effect that the canal was too narrow and too shallow, a responsible engineer be employed to cross section it, and submit the result to the government. While Barrow thought the idea a good one, and while plaintiff made arrangements to employ a highly responsible engineer, Barrow failed to carry out the idea. Later, plaintiff appeared before the Inland Waterways Convention in New Orleans, and addressed it, touching the purchase of the canal by the government, and prepared and submitted to the convention resolutions for its adoption. The purport of the resolutions, which were adopted, was that the government purchase either the canal, owned by Barrow or the Harvey Canal, there- ■ by eliminating the greater expense of constructing a new canal. While in Washington, on several occasions, on other business, plaintiff called on the government engineers there, and discussed with them the sale of Barrow’s canal to the government. He also made a trip to Lake Charles in the’interest of selling the canal to the government, and made a number of trips to see those in charge of the engineering department at the custom house in New Orleans, concerning the proposed sale, including Col. Dent, who seemed to be in charge of the matter. He also made two or three appearances before the government engineers, in New Orleans, to urge the purchase, and endeavored to get them to¡ go through the canal with Barrow. While these negotiations were in progress, Barrow, from time to time, went to plaintiff’s office and consulted him, regarding the sale, and plaintiff wrote for him a number of form letters, to be submitted to the government, touching the matter.
 

 In 1913, Barrow went to plaintiff’s office and told plaintiff that, in his opinion, there was no chance of selling the canal, that the government had definitely determined .to take the Harvey canal, and- that he desired to be released from his contract. Plaintiff replied
 
 *704
 
 by telling him there was no evidence of that, and, until the government decided not to take the canal, he saw no reason to grant the request. Plaintiff then left miffed.
 

 Shortly thereafter plaintiff saw in a newspaper that Barrow had agreed to sell to the government the section of the canal, later conveyed by him to it. Plaintiff then went to see Col. Dent regarding the newspaper ai'tiele, and Col. Dent advised him that the purchase of the section would be made if Barrow obtained a right of way 300 feet wide. Plaintiff then wrote Barrow, calling his attention to what he saw in the paper, and offered to assist in the preparation of abstracts and the securing of titles, but nothing came of the offer, save a declaration from Barrow that he did not care to have anything to do with plaintiff, and that he would not pay him.
 

 In order to enable Barrow to increase his right of way from 192 feet to 300 feet, the police juries of the parishes of Lafourche and Terrebonne, who were anxious to have the Intraeoastal canal pass through their territories, issued some $20,000 worth of script with which to purchase the land, necessary for the increased right of way. The required right of way was obtained, the titles were approved by the government, and the sale consummated in June, 1925, by the passing of the deed, which was a few months after the expiration of the contract between plaintiff and Barrow. A part of the proceeds of the sale was used by Barrow, amounting to $5,000, to pay for the abstracting of the title to the right of way, and another part, amounting to $20,000, was used by him to take up the certificates, issued by the parishes of Lafourche and Terrebonne, which was done by him in accordance with a prior agreement.
 

 On the foregoing facts the trial court rendered judgment in favor of plaintiff, based ■ upon both sales, for $9,500, with legal, interest from December 2, 1926, until paid, and for 10 per cent, of whatever amount may be recovered on the note of $40,000, signed by Donelson Caffery, trustee.
 

 This judgment is evidently based upon the fact that the gross amount received by Barrow from the government for the section of the canal sold it was $85,000, and upon the further fact that from this sum the court concluded that the $5,000, paid for abstracting the title, and the $20,000, used to take up the certificates, should be deducted, as expenses incurred in making the sale to the government, thus leaving a net balance, received by Barrow from the sale to the government, of the section of the canal, conveyed to it, as that section was, when the agreement between plaintiff and Barrow was made, of $60,000. Upon this balance the court evidently allowed plaintiff 10 per cent., or $6,000, as his fee or commission, under the contract. To this fee, the court evidently added 10 per cent, of the $35,000 cash received from the sale to Caffery, trustee, thus bringing the amount of the judgment up to $9,500. Then the court added the clause, awarding plaintiff 10 per cent, of such amounts as might be collected on the $40,000 note, executed by Caffery, trustee.
 

 So finding the basis upon which the judgment rests, we do not feel justified in disturbing the judgment as relates to that part of it awarding plaintiff $6,000, as commission or fee, under the contract, in the sale to the government, either by reversing the judgment in that respect, or by increasing it $2,000, as requested by plaintiff in his answer to the appeal.
 

 We think that it may be fairly inferred that the services, rendered by plaintiff, contributed to the sale to the government. It is true that the sale was not finally consummated by the passing of the deed and the
 
 *706
 
 payment of the money until several months after the contract between plaintiff and Barrow had expired by the lapse of time; nevertheless, while that contract was still in force, a practical agreement was reached between Barrow and the government by which the latter would purchase the section of the canal, later conveyed to it, if the right of way would be increased to the proper width — a condition which was accepted and afterwards fulfilled. In fact, the contract contemplates, so far as concerns time, that it is the final agreement to purchase that must be obtained within five years, but does not require that the sale itself be consummated within that period, by the passing of the deed and the payment of the consideration, as appears especially in the fourth clause of the first addendum, wherein it is declared that “the sale of said canal shall be finally agreed to within five years from the date hereof.” The agreement with the government, entered into prior to the expiration of the five-year period, may be said to be a final agreement. It was the one acted upon, and from which the government could not be expected to refuse to comply, upon the conditions being performed. As relates to the making of abstracts of title, or the securing of rights of way, it may be observed that the contract did not call upon plaintiff to assist in either, but it seems that he was willing to assist in both.
 

 As to the commission on the sale to Caffery, trustee, we are unable to sustain the conclusion reached by the trial court. While that sale was made in the consummation of an option, granted less than a month before the expiration of the five-year period, nevertheless, the granting or securing of an option is not equivalent to an agreement to purchase. The one to whom it is granted may refuse both morally and legally to avail himself of it by purchasing. There is no agreement to purchase until the grantee concludes to purchase, and none appears here until after the five-year period had expired. The fact that the granting of the option might have deprived plaintiff of a few days within which to obtain an agreement to purchase, or might have cut short the period for obtaining the agreement, by that much, does not alter the ease. The contract does not preclude the granting of options, in good faith, and plaintiff assumed the risk, here encountered, in entering into it.
 

 For these reasons, the judgment appealed from is amended by reducing it to $6,000, thereby eliminating the commissions on the sale to Caffery, trustee, and, as thus amended, it is affirmed, appellee to pay the costs of this appeal.